STATE of Utah, Plaintiff and Appellee,

v.

Charles R. MARTINEZ, Defendant and Appellant.

No. 900156–CA.

Court of Appeals of Utah.

May 8, 1991.

---

Lynn R. Brown and Joan C. Watt, (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen. and Sandra L. Sjogren (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BENCH, JACKSON and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Defendant Charles R. Martinez appeals from a trial court's order revoking his probation and committing him to the Utah State Prison to serve a previously imposed sentence of zero to five years. We affirm.

## FACTS

On November 20, 1989, Martinez pleaded guilty to possession of a controlled substance, a third degree felony, and was sentenced to serve zero to five years in the Utah State Prison. The trial court stayed imposition of the sentence and placed Martinez on probation, subject to certain conditions. According to the probation agreement which Martinez signed on December 18, 1989, these conditions included:

5. I shall obey all state and federal laws and municipal ordinances at all times....

6. I shall not own, possess, or have under my control or in my custody any explosives, firearms, or any dangerous weapons....

....

15. [I shall] not frequent places where drugs are used or sold.

On January 2, 1990, Deputy Slagowski of the county sheriff's office contacted Jeffrey T. Stickley, an officer with Adult Probation and Parole, to inform him of an alleged assault by Martinez upon his common-law wife, Debbie Hardman, with whom Martinez resided. In response, Officer Stickley went to an apartment located at 8070 West 3500 South, number 23, where he believed Martinez lived.[1] At approximately 8:00 p.m., Officer Stickley and three other agents arrived at the address and knocked loudly several times. A man, who identified himself as Charles Martinez's brother, Mike, answered the door. In addition to Mike Martinez, two other persons were present.

Officer Stickley introduced himself as Charles Martinez's probation officer and asked if he could come in and see if Charles was there. According to Officer Stickley's uncontroverted testimony, Mike Martinez responded, "We have nothing to hide in here. Go ahead." When the officers entered to look for Charles, they observed thirty-seven small pipe screens and ammunition in plain view in the kitchen. They also observed in the kitchen a Dialogram scale, the tray of which was covered with a fine white powder, later determined to be a controlled substance. Officer Stickley testified that the scales and pipe screens are commonly used in connection with the use or distribution of controlled substances.

Having found the aforementioned evidence of criminal activity, the officers asked for and obtained permission for a further search. In the southeastern bedroom, officers found a ChemShop receipt for ten vials and a Dialogram scale, made out to Charles Martinez. In the southwestern bedroom, the officers found a glass vial containing a white residue, a small handheld scale, and Charles Martinez's work card. Additionally, the officers found a .25 caliber semiautomatic pistol tucked into the mattress of the bed in one of the bedrooms.[2]

On this basis, Officer Stickley filed an affidavit requesting an order to show cause why Martinez's probation should not be revoked, alleging that he had violated his probation in the following respects:

3. By having had in his possession a Firearm ... in violation of condition number 5 of the probation agreement.

1. On his probation agreement, Martinez listed his address as 8076 West 3500 South, # 23, Magna, Utah. Officer Stickley testified that it was hard to tell whether the number written on the field operations report was 8076 or 8070, but that he had been to the apartment complex

before and found that the only apartment 23 was located at 8070 West, not 8076 West.

2. The State did not establish in which bedroom the gun was located.

4. By having committed the offense of Possession of Drug Paraphernalia ... in violation of condition number 5 of the probation agreement.

After an evidentiary hearing on the order to show cause, the trial court revoked Martinez's probation, finding that he was in violation of his probation on the basis of possession of a firearm and possession of drug paraphernalia.

## ISSUES

Martinez raises the following issues on appeal: (1) Was there sufficient evidence upon which to revoke his probation? (2) Was the evidence seized from the apartment the result of an illegal search and seizure? (3) Were his due process rights violated when the trial court relied on conditions not set forth in Officer Stickley's affidavit in revoking his probation?

## STANDARD OF REVIEW [3]

■ We will not disturb the factual determinations of the trial court unless such findings are clearly erroneous. *State v. Hargraves*, 806 P.2d 228 (Ct.App.1991) (citations omitted). However, conclusions of law arising from those factual findings are reviewed for correctness. *Id.*

## SUFFICIENCY OF THE EVIDENCE

■ Martinez relies on dictum in *State v. Hodges*, 798 P.2d 270 (Utah Ct.App.1990), *cert. denied* No. 900501 (Dec. 26, 1990) for the proposition that the State must prove violation of probation conditions by a preponderance of the evidence. However, *Hodges* is inapposite to Martinez's sufficiency of the evidence claim.[4]

In *Black v. Romano*, 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985), the United States Supreme Court held that a proba-

tion revocation proceeding involves two distinct steps: "(1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation." *Id.* at 611, 105 S.Ct. at 2257, (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 784, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973)). It is the sufficiency of the evidence in support of the first step that is at issue in the present case.

In *State v. Jameson*, 800 P.2d 798 (Utah 1990), the Utah Supreme Court addressed the sufficiency of the evidence question in a probation context. In *Jameson*, the defendant pleaded guilty to aggravated sexual abuse of a child and was sentenced to serve five years to life in the Utah State Prison. The trial court stayed the sentence and placed Jameson on probation with several conditions, including that he enter into and successfully complete the Fremont incest offender program. After he failed to do so, Jameson's probation was revoked.

In reviewing Jameson's contention that the evidence presented at his probation revocation hearing was insufficient to prove that he had violated his probation conditions, the Utah Supreme Court, implicitly recognizing the United States Supreme Court's analysis, held that "in order to succeed in this claim, defendant must show that the evidence of a probation violation, *viewed in a light most favorable to the trial court's findings*, is so deficient that the trial court abused its discretion in revoking defendant's probation." *Id.* at 804 (citations omitted) (emphasis added).

The emphasized language reflects the standard of review applied to findings of fact, that is, the "clearly erroneous" standard. *See, e.g., Doelle v. Bradley*, 784 P.2d

---

**3.** Since review of the trial court's decision to revoke Martinez's probation is at issue in this case, it is discussed separately.

**4.** In raising *Hodges,* Martinez invites us to reweigh the evidence on a preponderance scale, in hopes that we might conclude that it did not preponderate toward a finding that he violated his probation. We decline such invitation. The dictum cited from *Hodges* merely indicates that

in the trial court, the State must prove to the satisfaction of the trial judge that it is more likely than not, i.e., by a preponderance, that defendant violated his probation. Then, on appeal, we review the evidence, not on a preponderance scale, but simply to determine if the trial court's finding is against the clear weight of the evidence.

1176, 1178 (Utah 1989); *Terry v. Price Mun. Corp.*, 784 P.2d 146, 147 (Utah 1989) (per curiam); *Turnbaugh v. Anderson*, 793 P.2d 939, 941 (Utah Ct.App.1990). Therefore, the court's determination that a defendant violated his probation is a finding of fact which must be upheld unless such determination is clearly erroneous. "Further, a finding of fact by a trial court is 'clearly erroneous' only if it is against the clear weight of the evidence." *Turnbaugh*, 793 P.2d at 941 (citations omitted).

■ In the case at bar, the trial court based its finding that Martinez violated his probation on the following: (1) the reasonable inference from the evidence that the apartment searched was Martinez's residence,[5] (2) the presence of the pistol at the apartment, and (3) the presence of drug residue and paraphernalia. On the other hand, Martinez presented no evidence that he did not violate his probation. Upon review of the testimony and exhibits, the trial court's finding that Martinez violated his probation is well supported by the evidence and, therefore, not clearly erroneous.

## SEARCH AND SEIZURE

Next, Martinez contends that the evidence taken from his apartment was the result of an illegal search and seizure. Martinez claims that there must either be (1) valid consent to search, or (2) reasonable grounds for a warrantless search. He further claims that both are absent here, and therefore, this was an illegal search.

### Valid Consent

■ It is abundantly clear that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions.' " *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). Consistent therewith,

Martinez's probation agreement listed the following relevant conditions:

8. I agree to allow an agent of the Department of Corrections to search my person, residence, vehicle or any other property under my control, without a warrant, any time of day or night, upon reasonable suspicion as ascertained by an agent of the Department of Corrections to ensure compliance with the conditions of probation.

. . . .

14. [I agree to] [s]ubmit person, residence, and vehicle to search for drugs.

■ These two provisions indicate Martinez's consent to the search in question in this case. Martinez argues that implicit in the above provisions is a requirement that he be present at the time of the search to give "active consent." However, such interpretation is not implicit in the probation agreement and, as a policy matter, counterproductive to the probation system. To hold that a probationer must be present to give "active consent" to a search would nullify such provisions in probation agreements, making such provisions merely "agreements to agree." Moreover, by its own terms, the probation agreement permits searches "at *any time* of the day or night upon reasonable suspicion...." Therefore, valid consent to search was obtained pursuant to the probation agreement, but such consent was premised on the probation officer's reasonable suspicion of probation violation.

### Reasonable Suspicion

■ The Utah Supreme Court, in a parole context, has held that "under the reasonable suspicion standard, searches have generally been upheld where the parole officer's suspicion is based only on a tip by an anonymous informer, the police, or other sources." *State v. Velasquez*, 672 P.2d 1254, 1262 (Utah 1983) (and cases cited therein). Martinez has not presented any reason why the same should not be true in a probation context, and therefore, we

**5.** Evidence in support of this inference included the fact that the only apartment 23 at 8070 West or 8076 West was the apartment searched. Additionally, the field operations report, which Martinez had signed, indicated the said apartment as his only residence.

adopt the parole "reasonable suspicion" standard in the probation context.

■ In the present case, Officer Stickley testified that he was contacted by Deputy Slagowski "about an alleged assault by Mr. Martinez upon his common-law wife, Debbie Hardman." This testimony was objected to by defense counsel on hearsay grounds, and the trial court sustained the objection. Officer Stickley was then asked:

Q: You had a discussion, and as a result of that discussion and as a result of the contact ... did you, in fact go to the apartment of Mr. Martinez?

A: Yes, I did.

Martinez argues that the State thereby failed to demonstrate that Officer Stickley had reasonable suspicion of probation violation.

However, the trial court should not have sustained defense counsel's hearsay objection. Hearsay is defined as "[a] statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted.*" Utah R.Evid. 801(c) (emphasis added). Such statement was not offered to prove that Martinez was in fact committing an assault, but rather to establish why Officer Stickley went to Martinez's apartment. Moreover, the Rules of Evidence do not strictly apply in a probation revocation context. Utah R.Evid. 1101(b)(3). Thus, the statement should have been admitted.

■ Since assault constitutes a violation of Utah Code Ann. § 76–5–102 (1990), this statement was sufficient to give Officer Stickley a reasonable suspicion that Martinez was in violation of probation condition number 5, which required Martinez to "obey all state and federal laws and municipal ordinances at all times...."

■ Furthermore, even if the statement itself had been inadmissible, Officer Stickley's additional testimony sufficiently established that he received a police tip as to probation violation and, in response to that tip, went to Martinez's apartment to determine whether such tip was accurate and whether Martinez was, in fact, in violation of his probation. Such is sufficient grounds to establish reasonable suspicion on the part of Officer Stickley. *Velasquez,* 672 P.2d at 1262. Therefore, the search of Martinez's apartment was valid, and evidence seized therefrom was properly admitted.[6]

## RELIANCE ON CONDITIONS NOT PRESENT IN THE ORDER TO SHOW CAUSE

■ Lastly, Martinez argues that his due process rights were violated when the trial court relied on conditions not set forth in Officer Stickley's affidavit in revoking his probation.

In *State v. Cowdell,* 626 P.2d 487 (Utah 1981), the Utah Supreme Court recognized that a probationer is entitled to "written notice of the ground or grounds on which revocation is sought." *Id.* at 488 (citing *State v. Bonza,* 106 Utah 553, 150 P.2d 970 (1944) and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)). In *Cowdell,* the court reversed an order of revocation because the order to show cause

---

**6.** Even had the evidence been seized as the result of an illegal search, the great majority of jurisdictions which have addressed this issue have concluded that such evidence is nonetheless admissible at a probation revocation hearing, even though it would not be admissible in a criminal prosecution to determine guilt. *See, e.g., U.S. ex rel. Lombardino v. Heyd,* 318 F.Supp. 648 (E.D.La.1970), *aff'd* 438 F.2d 1027 (5th Cir.), *cert. denied* 404 U.S. 880, 92 S.Ct. 195, 30 L.Ed.2d 160 (1971); *Ex parte Caffie,* 516 So.2d 831 (Ala.1987); *State v. Alfaro,* 127 Ariz. 578, 623 P.2d 8 (1980); *McGhee v. State,* 25 Ark.App. 132, 752 S.W.2d 303 (1988); *People v. Willis,* 149 Cal.App.3d Supp. 56, 197 Cal.Rptr. 281 (1983); *People v. Ressin,* 620 P.2d 717 (Colo. 1980); *Bernhardt v. State,* 288 So.2d 490 (Fla. 1974); *People v. Swanks,* 34 Ill.App.3d 794, 339 N.E.2d 469 (1975); *Dulin v. State,* 169 Ind.App. 211, 346 N.E.2d 746 (1976); *Tiryung v. Commonwealth,* 717 S.W.2d 503 (Ky.Ct.App.1986); *State v. Caron,* 334 A.2d 495 (Me.1975); *Chase v. State,* 309 Md. 224, 522 A.2d 1348 (1987); *State v. Thorness,* 165 Mont. 321, 528 P.2d 692 (1974); *Lemire v. Bouchard,* 113 N.H. 174, 304 A.2d 647 (1973); *State v. Ray,* 41 Or.App. 763, 598 P.2d 1293 (1979); *Commonwealth v. Davis,* 234 Pa. Super. 31, 336 A.2d 616 (1975); *State v. Spratt,* 120 R.I. 192, 386 A.2d 1094 (1978); *State v. Kuhn,* 7 Wash.App. 190, 499 P.2d 49, *aff'd* 81 Wash.2d 648, 503 P.2d 1061 (1972).

stated one ground, commission of an aggravated robbery, while the ground relied on by the trial court was a conviction for driving under the influence of alcohol. In so reversing, the court held that "[l]ack of notice of the reason for which a person might be deprived of liberty completely denies that person the right to prepare a defense and effectively destroys the value of any defense that is available." *Id.* at 489.

In the present case, Officer Stickley's affidavit in support of the order to show cause stated that Martinez had violated his probation:

> 3. By having had in his possession a Firearm ... in violation of condition number 5 of the probation agreement.[7]
>
> 4. By having committed the offense of Possession of Drug Paraphernalia ... in violation of condition number 5 of the probation agreement.

The trial court, however, found Martinez in violation of condition numbers 6 and 15, which read:

> 6. I shall not own, possess, or have under my control or in my custody any explosives, firearms, or any dangerous weapons....
>
> 15. [I shall] not frequent places where drugs are used or sold.

Martinez argues that because the trial court relied on condition numbers 6 and 15, instead of condition number 5, *Cowdell* requires reversal of his revocation order.

We disagree. Martinez was fully and fairly put on notice by Officer Stickley's affidavit that the presence of the firearm and the drug paraphernalia at his apartment provided the grounds relied on for probation revocation. There was no lack of notice which would inhibit his ability to prepare his defense or destroy the value of any available defense. All that *Cowdell* requires is that a probationer be given notice of the alleged grounds for revocation. Such was given here, and therefore, Martinez's due process rights were not violated.

---

7. Condition number 5 of Martinez's probation agreement provided: "I shall obey all state and

## CONCLUSION

In conclusion, we hold that there was sufficient evidence upon which to revoke Martinez's probation, such evidence was lawfully seized from his apartment, and his due process rights were not violated by the trial court's reliance on conditions not set forth in Officer Stickley's affidavit in revoking defendant's probation. Accordingly, we affirm.

BENCH and JACKSON, JJ., concur.